Dear Mr. Tallo:
You have requested an opinion from our office on the interpretation of LA.R.S. 43:147B. Specifically you have asked us to define the phrase "per square of one hundred words or a fraction thereof," and whether the exception for tabulated matter pertains to the entire section or just the table itself. LA.R.S. 43:147B states, "When the publication of proceedings is not done by contract providing for a lesser amount, the cost of advertisement in all parishes which do not contain a city of over one hundred thousand population shall not exceed the rate of six dollars per square of one hundred words or a fraction thereof. When the insertion contains material to be set in tabular form, the tabulated matter shall be computed on the basis of the number of words of straight matter which would occupy identical space."
As pointed out in your brief, statutory language containing technical or industry-specific terms should be given their technical meaning or a meaning of common usage within that industry. Lasyone v. Phares, 2001-1785 (La.App. 1 Cir. 5/22/02), 818 So.2d 1068. The Lasyone case further states specifically that: "[t]he paramount consideration in interpreting a statute is ascertaining the legislature's intent and the reasons that prompted the legislature to enact the law." Lasyone v.Phares, 2001-1785 (La.App. 1 Cir. 5/22/02), 818 So.2d 1068. Therefore in defining the phrase "per square of one hundred words," it is vital to define the term "square" as used in the printing and publishing industry, and the intent of the legislature in incorporating the term into LA.R.S. 43:147(B).
According to Don Stewart, advertising director for the Baton Rouge Advocate, the phrase "per square of one hundred words" is an older term that refers to a sized block of text within a column of about two inches by two inches (depending on font size and column width). Mr. Stewart further stated that this phrase is known within the publishing industry as referencing a space or block that would average one hundred words, depending on the size font and column width, and not a specific count of one hundred words.
The phrase "per square of one hundred words" is also used in LA. R.S.43:205, which deals with costs of legal advertisements. Linked in that statute is the definition of the word "square" as found in Attorney General Opinion 1938-40 (p. 1065). This opinion quotes Act 235 of 1928, by defining a "square" to mean "ten lines of nonpareil type." Act 235 of 1928 goes in further detail to state: "each ten lines of nonpareil type of tax sales advertisement shall constitute a square" Nonpareil is defined as "one without equal: Paragon." WEBSTER'S II, NEW RIVERSIDE UNIVERSITY EDITION, p. 801 (1984). The word "paragon" also has a publishing definition of "type size of 20 points." WEBSTER'S II, NEW RIVERSIDE UNIVERSITY EDITION, p. 852 (1984). It is evident that the term "square" refers to a block or space of text, whether it is a block of ten lines or a block of one hundred words.
LA.R.S. 43:147 was originally enacted by Act 138 of 1962, which also contained the phrase "per square of one hundred words." This phrase has been continuously used throughout four subsequent amendments to the statute. In the most recent amendments by Acts 1999, No. 501, the intent of the Legislature is embodied in the notes preceding the Act, which states, "[t]o amend and reenact R.S. 43:147(B), to provide for maximum rates charged for publication of legal minutes in official journals; and to provide for related matters."
When considering the intent of the Legislature and the technical meaning of the term "square" within LA.R.S. 43:147, it is the opinion of this office that a block of space that would hold an average of one hundred words, should cost six dollars. Regardless of the size of the font, a block that would contain one hundred words in the selected font size, should cost the city six dollars. The intent of the statute is to set a rate newspapers can charge when setting these advertisements in line with normal key stroked advertisements, such as in the classified advertisement section. The newspaper should not be allowed to bypass these rate restrictions by scanning the advertisement to save the time and money of key stroking, then use the keystroke rates to charge for extra space the scanned area consumes.
Because the statute specifically refers to "one hundred words," the average one hundred word space should start at the first word and end at the one hundredth word, and not include blank space (other than what would normally appear between lines). It should not matter whether the publications are scanned or keystroked, so long as six dollars is charged for every square or block that would average one hundred words in a similar size font. The newspaper may scan the advertisements, but they are responsible for converting the billing into six-dollar key stroked increments. Whether this involves counting the words or key stroking them, this billing method must be maintained until new legislation is passed to address the scanning method.
In regards to your second inquiry of whether the exception for tabulated matter pertains to the entire section or just the table itself, it is the opinion of this office that the statute is unambiguous. LA.R.S. 43:147 clearly states that, "[w]hen the insertion contains material to be set in tabular form, the tabulated matter shall be computed on the basis of the number of words of straight matter which would occupy identical space." Therefore inserted tables are charged according to the above-mentioned method, as if the same space were used for "straight matter." There is no exception here. This line is simply to mandate that tables be charged according to the amount of one hundred-word straight text squares they consume, and not on their own one hundred-word average.
We trust that this answers your inquiry. Please contact our office if you have any further questions or concerns.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 By: ____________________ CHARLES H. BRAUD, JR. Assistant Attorney General
RPI/CHB:mjb
DATE RELEASED: January 23, 2003